UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Delores Dava Goodwin Zigila, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>Kilolo Kijakazi, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No.: 4:22-cv-00805-TER<br><br><br>ORDER |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.   Procedural History**

Plaintiff filed an application for DIB on December 2, 2019. (Tr. 33). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in July 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on September 1, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 33-42). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on January 13, 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this Court in March 2022.

(ECF No. 1).

**B.    Plaintiff's Background**

Plaintiff was born on June 4, 1976, and was forty-three years old at the alleged onset date. (Tr. 41). Plaintiff had at least a high school education and past relevant work experience as a surgical technician. (Tr. 41). Plaintiff alleges disability originally due to IBS, chronic constipation, rectocele, cystocele, endometriosis, clinical depression, OCD, and anxiety disorder. (Tr. 83). Pertinent medical records will be discussed under the relevant issue headings.

**C.    The ALJ's Decision**

In the decision of September 1, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 33-42):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2. The claimant has not engaged in substantial gainful activity since June 13, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: episode of cauda equina syndrome, status post L5-S1 discectomy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can never balance; can occasionally stoop, kneel, and crouch; and can never crawl. In addition, she should never work in extreme heat. The claimant's ability to understand remember and carry out instructions allows for the performance of uncomplicated, unskilled tasks [defined as tasks that can be learned in one month or less by just an on-the-job demonstration, and that require applying

      commonsense understanding to carry out detailed but uninvolved written or oral instructions]. The claimant's use of judgment allows for making uninvolved work-related decisions [defined as decisions involving no more than a few concrete variables in or from standardized situations]. She is able to tolerate few changes in a routine work setting [defined as no more than a few deviations from the core job duties].

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 4, 1976 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 13, 2019, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to consider the objective urodynamic test results that supported Plaintiff's subjective symptoms. Plaintiff argues Plaintiff's self-catheterization up to six times a day relates to a functional limitation in off task and impacts the ability to maintain pace and persistence. Plaintiff argues the ALJ failed to consider evidence that urinary dysfunction was attributed to cauda equina syndrome. Plaintiff argues the ALJ failed to evaluate the urinary symptoms' effect on ability to work. Plaintiff argues the ALJ erred in classifying urinary retention

as a non-severe impairment separate from cauda equina and erred in failing to classify neurogenic bladder as a severe impairment.

Plaintiff argues the ALJ erred by mischaracterizing cauda equina syndrome as episodic. Plaintiff argues the ALJ failed to consider limiting effects of pain and weakness in lower extremity due to cauda equina syndrome. Plaintiff argues she meets Listing 1.16

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments

---

there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Urinary**

Plaintiff makes a number of arguments based on urinary impairments, symptoms, and objective evidence. These arguments are made across multiple SSA Steps, like the severity of impairments, combination of impairments, subjective symptom evaluation, and the RFC determination.

Plaintiff argues the ALJ failed to consider the objective urodynamic test results that supported Plaintiff's subjective symptoms. Plaintiff argues Plaintiff's self-catheterization up to six times a day relates to a functional limitation in off task and impacts the ability to maintain pace and persistence. Plaintiff argues the ALJ failed to consider evidence that urinary dysfunction was attributed to cauda equina syndrome. Plaintiff argues the ALJ failed to evaluate the urinary symptoms' effect on ability to work. Plaintiff argues the ALJ erred in classifying urinary retention as a non-severe impairment separate from cauda equina consideration and erred in failing to classify neurogenic bladder as a severe impairment.

Beginning with the ALJ's statement about the objective evidence concerning urinary:

> The claimant has undergone **extensive workup for urinary and bladder problems** – including computed tomography (CT) scans (Ex. 2F/7; Ex. 7F/9); magnetic resonance imaging (MRI), a colonoscopy (Ex. 1F/5-6), a cystoscopy with bilateral retrograde ureteropyelogram, urethal dilation, and hydrodistention of the bladder (Ex. 17F/87-88) – **all of which were normal.**

(Tr. 36)(emphasis added). Defendant's brief uses the term "uniformly normal" to describe Plaintiff's

urinary objective test results. (ECF No. 14 at 10).

Plaintiff cites to the records which contradict both the Defendant and the ALJ. In October 2020, Plaintiff's treating specialist, urologist Dr. Brightbill ordered a urodynamic study. (Tr. 536). The urodynamic study was performed in November 2020 with urodynamic impressions of neurogenic bladder, urinary urgency with a premature sensation of bladder filling, and incomplete bladder emptying. "Treatment considerations based upon urodynamic impressions" by Dr. Griffin Morrisson were "has a neurogenic bladder" and "should be managed with clean intermittent catheterization." "Sacral neuromodulation could be considered." (Tr. 542). The record does not support the ALJ's statement that Plaintiff's urinary objective testing was normal. The ALJ did not resolve conflicting evidence in the record. In December 2020, Dr. Morrisson taught Plaintiff to "self-cath." (Tr. 555). The first cath prescription was for four times a day. (Tr. 556). In February 2021, the cath prescription order was changed to six per day, and Dr. Morrison found that Plaintiff had permanent urinary incontinence or retention and length of need was 99 months. (Tr. 562). Plaintiff testified that when she last worked as a surgical technician, she needed to take restroom breaks 7-10 times in a couple of hours, which caused her to have to drop out of surgical cases. (Tr. 68). Plaintiff testified after her cauda equina surgery, she has to self-catheterize 4-6 times a day. (Tr. 68-69). Plaintiff testified she needed to stay close to the bathroom. (Tr. 73). The VE testified 10% was the max allowable time off task. (Tr. 81). As demonstrated above, contemporaneous treatment notes and Plaintiff's testimony may be supported by the urodynamic impressions from the objective test and treatment recommendations.

Defendant asserts that Plaintiff did not identify any additional limitations that should have been in the RFC concerning urinary issues. (ECF No. 14 at 12). However, Plaintiff points that the

time to self-catheterize numerous times would cause Plaintiff to be off task for more than an acceptable amount of time during the work day and may also impact the ability to maintain pace and persistence. (ECF No. 12 at 12-13).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

Concerns over time spent in the bathroom affecting the RFC considerations of time off task and CPP have recently been addressed by the Fourth Circuit Court of Appeals. "Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks."*Dowling v. Comm'r*, 986 F.3d 377, 389 (4th Cir. 2021)("On remand, the ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work.").

Once the ALJ here decided Plaintiff's urinary issues were non-severe impairments, there was

no further mention of them when the ALJ performed the subjective symptom evaluation and when the ALJ determined the RFC. The ALJ does not mention in the subjective symptom evaluation about Plaintiff's testimony about bathroom breaks and catheterization. (Tr. 38). All the evidence discussed under the RFC determination is only as to Plaintiff's back and lower extremities. (Tr. 38-39). Even non-severe impairments are to be considered in the RFC determination discussion. Regulations require that an ALJ "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe," in determining the claimant's RFC.  20 C.F.R. § 404.1545(e); *see also* SSR 96–8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "). It appears the ALJ did not make any consideration as to urinary impairments in determining the RFC. (Tr. 38-40).

Because there is no consideration of Plaintiff's urinary impairments in the subjective symptom evaluation or the RFC determination and there is unresolved, conflicting evidence as to abnormal objective testing the ALJ did not consider, based on the foregoing record and applicable published case law, the court simply "cannot tell whether [the ALJ's] decision is based on substantial evidence." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ has not provided the court with a meaningful opportunity to review the subjective symptom evaluation, the RFC, and the RFC explanation/narrative. Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps.  Therefore, the Court will not address Plaintiff's remaining issues. Upon remand, the ALJ should take into consideration all of Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the

evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

|  |  |
|---|---|
| February 13, 2023 | s/Thomas E. Rogers, III |
| Florence, South Carolina | Thomas E. Rogers, III |
|  | United States Magistrate Judge |